IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| RIMA ODEH, <br><br> Plaintiff, <br><br> v. <br><br> LOUIS DEJOY, Postmaster General of the United States Postal Service, <br><br> Defendant. | MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT <br><br> Case No. 2:22-cv-00706-JNP-DAO <br><br> District Judge Jill N. Parrish |

Plaintiff Rima Odeh sued Louis DeJoy in his official capacity as the Postmaster General of the United States Postal Service (USPS). Odeh alleged that the USPS discriminated against her based on her gender, race, national origin and religion by firing her. She also claimed that the USPS retaliated against her for opposing discrimination. Before the court is a motion for summary judgment filed by the USPS on these claims. ECF No. 30. The motion is GRANTED.

## BACKGROUND[1]

Odeh is female, Middle Eastern, Palestinian, and Muslim. In September 2018, the USPS hired Odeh as a 90-day probationary mail processing clerk at its East Bay Plant. Probationary employees typically received performance reviews at the 30-day, 60-day, and 80-day marks of the probation period. But Odeh's supervisor did not give Odeh a timely 30-day performance review. Instead, the supervisor gave Odeh both her 30-day and 60-day performance reviews at the 60-day

---

[1] The court recites the facts of the case by resolving all disputes of fact in favor of Odeh.

mark. Odeh's supervisor told Odeh that she was doing very well, but that the supervisor had marked some categories of evaluation as unsatisfied because Odeh had not been trained on the delivery bar code sorter (DBCS) machine. The supervisor told Odeh that during the upcoming week Odeh would start training on the DBCS machine and that she would work on the machine for the next two weeks. The supervisor also stated that Odeh would be evaluated on her knowledge of the DBCS machine at the end of those two weeks.

Odeh subsequently received two days of training on the DBCS machine. On her third day her shift was earlier than usual, and her shift supervisor expected Odeh to know how to set up the machine, a task for which she had not been trained. The shift supervisor did not help Odeh or assign another worker to properly train her. On her fourth day operating the DBCS machine, her assigned trainer told Odeh that she did not need supervision and that he would help her by "sweeping" instead. On Odeh's next day of work, her supervisor scheduled her to work on a different machine. Odeh voiced her concern that she was not getting her second week of training on the DBCS machine, but her supervisor said that she needed to rotate other people onto the machine. Odeh did not complete her second week of training on the DBCS machine.

About a week later, on November 28, 2018, Odeh asked her supervisor about her evaluation on the DBCS machine. Odeh also asked her supervisor for two weeks off in early January 2019 to attend a family event in Australia. The supervisor told Odeh that she needed to consult with someone about the vacation time request and that she would give Odeh an answer the following day. The supervisor also asked Odeh to page her the next day to receive her DBCS machine evaluation.

Odeh's next shift began in the evening of November 29, 2018 and ran into the early morning hours of November 30, 2019. Around 2:00 a.m. on November 30, Odeh's supervisor

informed her that she was being terminated for failure to meet expectations. Odeh's supervisor represented that the shift supervisors had reported that Odeh sometimes stood around without performing any duties while on the clock and that she needed to be reminded that she needed to find work that needed to be done in other areas. One shift supervisor stated that Odeh slowed productivity when operating one of the sorting machines. Another reported that when Odeh was training on the DBCS machine, she repeatedly stood around and made no effort to learn what was to be done next. Thus, Odeh's supervisor stated that she was being let go for failing to work hard enough and insufficient productivity.

Odeh sued the USPS, asserting two claims for unlawful termination: (1) retaliation and (2) unlawful discrimination based on her gender, race, national origin and religion. The USPS moved for summary judgment on both claims.

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment on a claim is required if the party that bears the burden of proof at trial "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

If an employee relies on circumstantial evidence to prove an employment discrimination claim, courts apply the *McDonnell Douglas* burden-shifting framework when evaluating a motion

3

for summary judgment. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). This three-step analytical framework first demands that the employee carry his or her initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. If the employee satisfies this step, the burden then shifts to the employer to "to articulate some legitimate, nondiscriminatory reason" for the adverse employment action taken by the employer. *Id.* Finally, the burden shifts back to the employee to show that that the employer's stated reason for the adverse employment action was pretextual. *Id.* at 804.

## ANALYSIS

### I. RETALIATION

The USPS argued that the court should grant summary judgment on the retaliation claim because Odeh failed to exhaust her administrative remedies for this claim. In her response brief, Odeh conceded that she did not exhaust her administrative remedies and that this claim is procedurally barred. The court, therefore, grants summary judgment on this claim.

### II. DISCRIMINATION

Odeh alleges that the USPS violated her rights under Title VII by firing her because of her gender, race, national origin, and religion. Because she relies on circumstantial evidence to prove her discrimination claim, it is subject to the *McDonnell Douglas* burden-shifting framework on summary judgment. The USPS argues that it is entitled to summary judgment because Odeh cannot satisfy either step one or step three of *McDonnell Douglas*. Because the court concludes that Odeh has not met her burden to show pretext under step three, the court need not analyze whether she has established a prima facie case under step one.

Odeh concedes that the USPS articulated a legitimate, nondiscriminatory reason for her termination: its assessment that she failed to meet productivity expectations. In order to avoid

4

summary judgment, Odeh must show that the USPS's stated reason for the termination was pretextual. "A plaintiff may show pretext by demonstrating the 'proffered reason is factually false,' or that 'discrimination was a primary factor in the employer's decision.'" *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017) (citations omitted). "This is often accomplished 'by revealing weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered reason, such that a reasonable fact finder could deem the employer's reason unworthy of credence.'" *Id.* (citation omitted).

Odeh asserts that the USPS's stated reason for her termination was pretextual for three reasons.

### A. Inadequate Feedback and Training

Odeh argues that her supervisor's evaluation that she was not working hard enough was pretextual because it was unfair and the result of poor management. First, she contends that her supervisor did not give her adequate feedback or fair notice of the expectations of her employment. Odeh points to her supervisor's failure to provide a 30-day evaluation, depriving her of an opportunity to improve her performance between the 30-day and 60-day evaluation. She also contends that in her 60-day evaluation, her supervisor failed to adequately communicate that she was not meeting productivity standards. Second, Odeh asserts that she received inadequate training on how to operate some of the machines, resulting in poor performance reviews. For example, she claims that she was promised two weeks of training on the DBCS machine but received only four days of training, much of it cursory in nature. Odeh also argues that her shift supervisor unfairly gave her a negative review because she had not been trained on how to set up the DBCS machine.

As a matter of law, Odeh's complaints about unfair assessments and poor management are insufficient to prove pretext. When evaluating a pretext argument, courts "must not sit as a

superpersonnel department that second-guesses the company's business decisions, with the benefit of twenty-twenty hindsight." *Iweha v. State of Kansas*, 121 F.4th 1208, 1226 (10th Cir. 2024) (citation omitted). "'The relevant inquiry is not whether [the employer's] proffered reasons were wise, fair or correct,' but rather we ask whether they believed those reasons to be true and 'acted in good faith upon those beliefs.'" *Piercy v. Maketa*, 480 F.3d 1192, 1200 (10th Cir. 2007) (citation omitted). "Accordingly, '[courts] do not second-guess the employer's decision even if it seems in hindsight that the action taken constituted poor business judgment.'" *Iweha*, 121 F.4th at 1226 (citation omitted). Odeh does not argue that the USPS's stated reason for her termination was implausible, inconsistent, or incoherent. Instead, she contends that her termination was not fair because she did not receive adequate feedback or training. But the court may not second guess the reasons for Odeh's termination on the grounds that they were unfounded or unjust so long as discrimination was not a motivating factor. Thus, inadequate feedback or training is not sufficient to show pretext.

      B.      *Disparate Treatment Regarding Training and the 30-day Review*

Odeh also argues that she can show that the USPS's reasons for termination were pretextual through evidence of disparate treatment. "[A] plaintiff may . . . show pretext on a theory of disparate treatment by providing evidence that he was treated differently from other similarly situated, nonprotected employees . . . ." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1232 (10th Cir. 2000). In determining whether employees are similarly situated, courts "compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees." *Id.* (citation omitted). "Not every difference in treatment, of course, will establish a discriminatory intent." *Id.* "Differences in treatment that

6

are trivial or accidental or explained by a nondiscriminatory motive will not sustain a claim of pretext." *Id.*

Odeh contends that her supervisor treated her differently than other employees by not giving her adequate training or a timely 30-day evaluation. But the only evidence to support this assertion is a citation to the following statement that Odeh made in an affidavit during her EEO investigation: "Also, I was denied adequate training I was not given my 30 days review and was not given the opportunity to work overtime like other employees."

It is doubtful that the phrase "like other employees" modifies Odeh's statement about inadequate training or the lack of a 30-day review. The most likely interpretation of this sentence is that Odeh was asserting only that she was not given the same overtime opportunities of other employees.[2] But even if this sentence is read as a claim that Odeh was treated differently than other employees who received adequate training or a 30-day review, this assertion would be too indefinite to support an inference of pretext. A claim of disparate treatment must be supported by evidence that the plaintiff and the comparators were similarly situated, such as proof that the comparators had the same supervisor and had roughly the same employment circumstances. *Kendrick*, 220 F.3d at 1232. Absent any indication as to the identity of the unidentified comparators, the court has no way to confirm whether any differential treatment indicates discriminatory bias. Thus, Odeh's vague reference to "other employees" without any supporting information or context is not sufficient to show pretext. *See Hamilton v. Boise Cascade Exp.*, 280 F. App'x 729, 732 (10th Cir. 2008) (holding that "vague testimony that other employees with

---

[2] Although Odeh asserted disparate treatment based on overtime opportunities in her administrative proceedings, she did not raise this theory in her briefing before this court.

different supervisors also had unspecified attendance issues but were treated differently" was insufficient proof of pretext); *Malik v. Amini's Billiard & Bar Stools, Inc.*, 454 F. Supp. 2d 1106, 1115 (D. Kan. 2006) (absent any "specific evidence" that other employees were similarly situated, assertions of disparate treatment were insufficient to show pretext).

      C.      *Disparate Treatment Regarding Vacation Request*

Odeh also argues that disparate treatment regarding her two-week vacation request shows that the stated reason for her termination was pretextual. She contends that she was treated less favorably than one of her fellow probationary employees—L.C., whom she alleges to be male, Latino, from Mexico, and Christian/LDS—because he was given time off. The court finds no plausible inference of pretext for two reasons.

First, Odeh's argument is premised on the assumption that the USPS denied her vacation request. But the undisputed evidence does not support this contention. Odeh made her vacation request on November 28, 2018. Odeh's supervisor responded that she needed to ask someone else about authorizing the request and that the supervisor would get back to Odeh. On November 30, 2018 at 2:00 a.m., the supervisor fired Odeh, mooting her vacation request. Because there is no evidence that the USPS ever denied her request, Odeh was not treated differently than L.C. under similar circumstances.

Second, L.C. was not similarly situated to Odeh. The USPS presented evidence that L.C. was not given any time off. Instead, he traded one of his scheduled days off with another employee in order to turn his regular two-day weekend into a three-day weekend so that he could travel to California to see a friend in the hospital. Even if L.C. had been given an extra day off, this amount of leave is substantially different that the two weeks requested by Odeh. Thus, L.C. is not an appropriate comparator to Odeh and cannot support her claim of pretext.

## CONCLUSION

For the above-stated reasons, Odeh has not carried her burden to show pretext under step three of the *McDonnell Douglas* framework for her discrimination claim. And she has conceded that her retaliation claim is procedurally barred. Accordingly, the court grants summary judgment in favor of the USPS.

DATED September 29, 2025.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge